IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 11–cv–02754–MSK–KMT

LIBERTY MEDIA HOLDINGS, LLC,

    Plaintiff,

v.

SHENG GAN f/k/a PROTECTED DOMAIN SERVICES CUSTOMER NCR-3356109 d/b/a SITERIPKING.COM, and
JOHN DOES 2-10,

    Defendants.

---

# ORDER

---

This matter is before the court on "Plaintiff's *Ex Parte* Motion for Alternative Service." (Doc. No. 15, filed Dec. 29, 2011.) In its Motion, Plaintiff seeks a court order permitting it to serve Defendant Sheng Gan f/k/a Protected Domain Services Customer NCR-336109 (hereinafter, "Defendant") by email, pursuant to Federal Rule of Civil Procedure 4(f)(3) and 4(h)(2).

Federal Rule of Civil Procedure 4(f)(3) authorizes service upon an individual in a foreign country "by . . . means not prohibited by international agreement, as the court orders." Rule 4(h)(2) provides that a foreign corporation, partnership or association may be served in "any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Plaintiff maintains that since *Rios Properties, Inc. v. Rio*

*International Interlink,* 284 F.3d 1007 (9th Cir. 2002), courts have widely approved of service via email pursuant to subsections (f)(3) and (h)(2) of Rule 4.

In *Rio Properties,* the plaintiff sought to complete service of process via email after it was unable to conventionally serve the defendant, a Costa Rican entity that conducted business solely via the internet. 284 F.3d at 1012-13.  The plaintiff first attempted to serve the defendant at a Florida address it had used to register its website; however that addressed housed the defendant's international courier. *Id.* at 1013. Although the courier agreed to forward the summons and complaint on to the defendant, it was not authorized to accept service on the defendant's behalf. *Id.* Shortly thereafter, the plaintiff was contacted by an attorney who represented to the plaintiff that the defendant had received the summons and complaint, and had contacted him, the attorney, regarding how to respond. *Id.* The plaintiff inquired if the attorney would accept process on the defendant's behalf; however, the attorney declined. *Id.*

Consequently, the plaintiff filed a motion for alternate service of process seeking, among other things, to serve the defendant via an email address through which the defendant preferred to receive communications. *Id.* The district court granted the plaintiff's motion and permitted service of process to be completed via email. *Id.*

In affirming that email service was appropriate, the Ninth Circuit first looked to Rule 4(f)(3) itself. *Id.* at 1014. The court noted that the plain language of Rule 4(f)(3) provided only two limitations on alternate means of service of process on a foreign individual—it "must be (1) directed by the court; and (2) not prohibited by international agreement." *Id.* The court further acknowledged that "even if facially permitted by Rule 4(f)(3), a method of service of process

2

must also comport with constitutional notions of due process." *Id.* at 1016. To meet this requirement, the method of service crafted by a district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

While acknowledging that it was "tread[ing] upon untrodden ground," the *Rio Properties* court noted that the broad constitutional principle that service be "'reasonably calculated to provide notice and an opportunity to respond . . . unshackles the federal courts from anachronistic methods of service and permits them entry into the technological renaissance." *Id.* at 1017. The Ninth Circuit urged that "'Courts . . . cannot be blind to changes and advances in technology.'" *Id.* (quoting *New England Merch. Nat'l Bank v. Iran Power Generation and Transmission Co.,* 495 F. Supp. 73, 81 (D.C.N.Y. 1980).

Consequently, on the facts in *Rio,* the court found that not only was service of process via email proper, but was, in fact, "the method of service most likely to reach [the defendant]." *Id.* The court noted that the defendant had "embraced the modern e-business model and profited immensely from it" and "had neither an office nor a door; it had only a computer terminal." *Id.* at 1017-18. The defendant had thus "structured its business such that it could be contacted *only* via its email address." *Id* at 1018 (emphasis in original). Consequently, the court concluded that "[i]f any method of communication [was] reasonably calculated to provide [the defendant] with notice, surely it [was] email . . . . [I]t was a means reasonably calculated to apprise [the

defendant] of the pendency of the lawsuit, and the Constitution requires nothing more." *Id.* at 1018.

Notably, however, while the *Rio Properties* court endorsed service of process by email in that case, it was "cognizant of its limitations." *Id.* Among other things, it noted that often there is no way to confirm that an email message, along with all its attachments, was actually received. *Id.* Accordingly, the court acknowledged that a district court must exercise discretion in balancing "the limitations of email service against its benefits in any particular case." *Id.* (citation omitted).

Plaintiff points out that since *Rio Properties,* a number of courts have approved of service by email pursuant to Rule 4(f)(3). (Mot. at 5 [collecting cases].) There has been some mild disagreement, however, over whether a court should ordinarily require a plaintiff to attempt to conventionally serve the defendant before authorizing alternate service of process. More specifically, while the *Rios Property* court found that "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief,'" *Rios Properties,* 284 F.3d at 1015, other courts—including one decision from this district —have concluded that the court may "require that plaintiff show that he made reasonable efforts to serve the defendant and that the court's further intervention will avoid further unduly burdensome or futile efforts at service." *Blumedia Inc. v. Sordid Ones BV,* 10-cv-1158–MSK–KLM, 2011 WL 42296 (D. Colo. Jan. 6, 2011) (internal quotation marks and citations omitted) (denying alternate service of process because the plaintiff had not attempted to serve the defendant through the Hague Convention's central

4

authority procedure); *see also Williams v. Advertising Sex LLC,* 231 F.R.D. 483, 486 (N.D. W. Va. 2005).

The court need not detain itself with this question, however, because the court finds that Plaintiff has taken more than reasonable measures to attempt to serve Defendant. While early discovery served upon Name.com turned up that Defendant is the owner and operator of the siteripking.com website at issue in this case, his actual street address and geographical location are still unknown. (Mot. at 2.) Both the Costa Rica address more recently associated with the domain name SiteRipKing.com, and the China address originally used to register the domain name are incomplete. (*Id.,* Ex. A.) Moreover, Plaintiff has made extensive efforts to uncover more precise information about Defendant's physical locale to no avail. (Doc. No. 15-1, Declaration of Erika Dillon [Dillon Decl.], ¶¶ 11-35.) Plaintiff has only been able to uncover two email addresses associated with Defendant and the siteripking.com website—support@siteripking.com and kankaqi@gmail.com. (Mot., Ex. A.) Accordingly, regardless of whether making reasonable efforts to serve the defendant without court intervention is a prerequisite to pursuing alternate service under Rule 4(f)(3), the court finds that Plaintiff has fulfilled this potential requirement.

Rule 4(f)(3) requires the court to next determine whether the proposed service of process by email on Defendant is prohibited by international agreement. Plaintiff persuasively argues that, even assuming that the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ("Hague Service Convention"), might otherwise require Plaintiff to pursue more conventional means of

service, it does not apply in this case. More specifically, Article 1 of the Hague Service Convention provides that "[t]his convention shall not apply where the address of the person to be served with the document is not known." 20 U.S.T. 361; *see also BP Products N.A., Inc. v. Dagra,* 236 F.R.D. 270, 271 (E.D. Va. 2006). Here, as discussed above, Plaintiff has made extensive efforts to uncover Defendant's physical address or location, but has only uncovered incomplete Chinese and Costa Rican addresses. Consequently, the Hague Service Convention does not apply here.

Finally, the court must find that service of process by email in this case complies with constitutional notions of due process. *Rio Properties,* 284 F.3d at 1016-17. Here, the court finds a hang-up. Plaintiff's proposal for alternative service, at least as presently fashioned, falls short of complying with due process because the limitations of service of process by email identified by the *Rio Properties* court are acute in this case. More specifically, although Plaintiff analogizes this case to *Rio Properties*—where the court found that the defendant was playing "hide-and-seek" with the federal court by receiving the complaint and summons through its courier and attorney, but refusing to accept service of process—there is no indication that Defendant Gan is independently aware of the pendency of this litigation.

Additionally, unlike in *Rio Properties,* where the defendant designated, and utilized, its email address as its preferred method of contact, here there is no indicia of the extent to which Defendant uses either the support@siteripking.com or the kankaqi@gmail.com email address. Nor is there any indication that Defendant has held these addresses out to the public as a

6

preferred means of contact; rather, Plaintiff admits that it only learned of them when Defendant's privacy services stripped Defendant's anonymity from its records. (Mot. at 7.)

More to the point, there is no reasonable assurance that Plaintiff's emailed complaint and summons will be received on the other end. Defendant's conduct in this case, as alleged by Plaintiff, is certainly surreptitious. This is further corroborated by the fact that Defendant provided Name.com with incomplete physical addresses and the fact that the allegedly offending SiteRipKing.com site has now been dismantled. (Dillon Decl. ¶ 37.) In light of these facts, the court has little reason to believe that Defendant has not likewise abandoned both of the email addresses by which Plaintiff proposes to effect service. While the court acknowledges that email may be Plaintiff's last resort, to allow Plaintiff to complete service of process by emailing the complaint and summons to these email addresses without any confirmation of receipt would be akin to allowing Plaintiff to slide a complaint and summon under the front door of what appears to be an abandoned residence. Ultimately, the court finds that due process requires more.[1]

---

[1] The court's conclusion is bolstered by a review of the cases following *Rio Properties.* Many courts have also required that the plaintiff make some showing that it is reasonably likely that the defendant will actually receive email communications at the email address in question. *See, e.g., MacLean-Fogg Co. v. Ningbo Fastlink Equip Co.,* No. 08 CV 2593, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008) (finding that the plaintiffs demonstrated a high likelihood that the that the defendants would receive and respond to email conclusions because the defendants conducted business through their website, included email addresses on that website, and corresponded with customers via email); *Philip Morris USA Inc. v. Veles, Inc.,* No. 06 CV 2988(GBD) 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (where the plaintiff showed that the defendants conducted business extensively, if not exclusively, through their websites and corresponded regularly with customers via email); *Chanel, Inc. v. Lin,* 08-23490-CIV, 2009 WL 1034627, at *2 (Apr. 16, 2009) (finding that service of process via email was not reasonably calculated to put the defendant on notice of the pending litigation where the plaintiff failed to demonstrate that the defendant specifically sent and received emails via the email address in

While the court would be warranted to deny Plaintiff's Motion for this reason, in order to conserve party and judicial resources, the court elects another course. In *Williams,* the court found that the reliability of email service was likely to be enhanced by the plaintiff's use of the website service "Proof of Service-electronic" ("PoS-e"). 231 F. Supp. at 488. That service offered "encrypted on-line delivery of documents and returns a digitally signed proof of delivery once the document has been received by the target e-mail." *Id.* The court finds that if Plaintiff's proposal for service of process via email were similarly enhanced, it would be far more likely to pass constitutional muster.

Accordingly, rather than outright deny Plaintiff's Motion and have Plaintiff file a renewed motion addressing the court's concerns, the court will allow Plaintiff to supplement to its present motion with a proposed method for serving Defendant via email that, as in *Williams,* would further assure that the email message featuring Plaintiff's complaint and summons is actually received.

Therefore, it is

ORDERED that "Plaintiff's *Ex Parte* Motion for Alternative Service" (Doc. No. 15) is TAKEN UNDER ADVISEMENT. Plaintiff may file a Supplement to its Motion no later than

---

question). *But see Popular Enterprises v. Webcom Media Group, Inc.,* 225 F.R.D. 560, 562-63 (E.D. Tenn. 2004) (permitting service via email based on a showing that the email did not "bounce back" and thus "presumably reached defendant").

January 27, 2012, at which point the court will issue a more definitive ruling on Plaintiff's Motion.

Dated this 17th day of January, 2012.

BY THE COURT:

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge