IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 11–cv–02754–MSK–KMT

LIBERTY MEDIA HOLDINGS, LLC,

    Plaintiff,

v.

SHENG GAN f/k/a PROTECTED DOMAIN SERVICES CUSTOMER NCR-3356109 d/b/a
SITERIPKING.COM, and
JOHN DOES 2-10,

    Defendants.

---

# ORDER

---

This matter is before the court on "Plaintiff's *Ex Parte* Motion for Alternative Service." (Doc. No. 15, filed Dec. 29, 2011 [Mot.].)  In its Motion, Plaintiff seeks to serve Defendant Sheng Gan f/k/a Protected Domain Services Customer NCR-3356109 (hereinafter "Defendant") by alternate means of service, pursuant to Federal Rule of Civil Procedure 4(f)(3).  Plaintiff's Motion originally sought to serve Defendant by email.  (*See id.*)

On January 17, 2012, the court issued an Order taking Plaintiff's Motion under advisement.  (Doc. No. 17, filed Jan. 17, 2012 [hereinafter "Jan. 17, 2012 Order" or "Order"].)  In that order, the court found that, while not prohibited by international agreement, Plaintiff's proposal to serve Defendant by email failed to comply with constitutional notions of due process.  (*Id.* at 6–8.)  Specifically, the court found that there was no indication that Defendant

was independently aware of this litigation and that there was no reasonable assurance that Plaintiff's email of the complaint and summon would be received at the email addresses provided by Plaintiff. (*Id.*) Consequently, the court found that Plaintiff's proposal for alternate service under Rule 4(f)(3) was not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Nevertheless, the court elected to take Plaintiff's Motion under advisement to allow Plaintiff an opportunity to cure the constitutional deficiencies noted in the Order. Specifically, the court found that if Plaintiff was able to enhance its email service proposal with some reliable assurance that the email service of process were received by the target email, such as a "digitally signed proof of delivery," it would be far more likely to pass constitutional muster. (Jan. 17, 2012 Order at 8 (quoting *Williams v. Advertising Sex LLC,* 231 F.R.D. 482, 486 (N.D. W. Va. 2005)). Thus, the court ordered Plaintiff to file a supplement to its motion with an enhanced method for serving Defendant via email, that would further assure that Plaintiff's complaint and summons was actually received.

Plaintiff filed its Supplement to Plaintiff's *Ex Parte* Motion for Altenative [sic] Service" on January 25, 2012. (Doc. No. 17 [Supp.].) In its Supplement, Plaintiff notes that Defendant has disabled the email accounts referenced in its Motion. (Supp. at 3.) Specifically, on January 18, 2012, the day after the court's Order, Plaintiff's counsel attempted to send emails to the two email addresses included in its Motion—kankaqi@gmail.com and support@siteripking.com

—and both emails were returned as undeliverable. (Doc. No. 18-1, Declaration of Mark Randazza, ¶¶ 4-5 [Randazza Decl.].)

As a consequence, Plaintiff no longer seeks to serve Defendant via email. Instead, Plaintiff's Supplement now proposes another alternate means of service pursuant to Rule 4(f)(3)—service by publication on the internet. Specifically, Plaintiff seeks to "place a website on the internet with the name of this case, the name of the Defendant, and an announcement of the lawsuit with PDF links to the Complaint and Summons." (Supp. at 8-9.) Additionally, Plaintiff seeks to have the court order Name.com, which provides domain registration and hosting services to the allegedly infringing www.siteripking.com website (Doc. No. 8, filed Oct. 28, 2011, at 2), to re-direct the Defendant's other domain names to this internet publication. (Supp. at 9.)

As noted in the court's January 17, 2012 Order, Rule 4(f)(3) provides only two express limitations on alternate means of service of process on a foreign individual—it "must be (1) directed by the court; and (2) not prohibited by international agreement." (Jan. 17, 2012 Order at 2 (quoting *Rios Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1014 (9th Cir. 2002)); *see also* Fed. R. Civ. P. 4(f)(3). For essentially the same reasons outlined in the January 17, 2012 Order, the court finds that service by publication on the internet is not prohibited by international agreement. More specifically, the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ("Hague Service Convention") provides that "[t]his convention shall not apply where the address of the person to be served with the document is not known." *See also BP Products N.A., Inc. v. Dagra,*

3

236 F.R.D. 270, 271 (E.D. Va. 2006). Here, as outlined in the court's January 17, 2012 Order, Plaintiff has made extensive efforts to uncover Defendant's physical address or location, but has only uncovered incomplete Chinese and Costa Rican addresses. Consequently, because Plaintiff's whereabouts are unknown, the Hague Service Convention does not apply.

In addition to the requirements of Rule 4(f)(3), as discussed above, the court must also assure itself that the proposed alternate method of service "comport[s] with constitutional notions of due process." *Rio Props.,* 284 F.3d at 1016. *See also id.* at 1016-17 (quoting *Mullane,* 339 U.S. ("To meet this requirement, the method of service crafted by a district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'")

Courts have recognized that "service by publication . . . is an acceptable alternative means under 4(f)(3), so long as diligent attempts have been made to locate the defendant and serve process by traditional means,[1] and the publication is one that likely would reach the defendant." *BP Products,* 236 F.R.D. at 272; *see also SEC v. Tome,* 833 F.3d 1086, 1093 (2d Cir. 1987). Additionally, prior to authorizing service by publication, courts have required that the defendant be aware of the suit and claims against them. *Tome,* 833 F.3d at 1093-94; *BP Products,* 236 F.R.D. at 272; *In re Maxon Eng'g Servs., Inc.,* 418 B.R. 653, 666 (D.P.R. 2009).

---

[1] The court already concluded in the January 17, 2012 Order that Plaintiff has taken more than reasonable measures to attempt to serve Defendant by traditional means. (Jan. 17, 2012 Order at 4-5.) Those findings and conclusions are incorporated herein by reference.

The court finds that Plaintiff's proposal to serve Defendant by internet publication fails on both counts.

As to the second requirement, whether Defendant is aware of this suit, Plaintiff maintains that Defendant is likely monitoring this litigation. (Supp. at 10.) In support of this position, Plaintiff notes that the allegedly infringing website, www.siteripking.com, was operational on Friday, October 28, 2011, and remained operational when Plaintiff checked it at some point during the week of October 31, 2011, but was no longer operational on November 9, 2011 when this court entered its order on Plaintiff's Motion for Early Discovery (Doc. No. 12). (Doc. No. 18-2, Declaration of Erika Dillon, ¶ 15 [Dillon Decl.].) Additionally, Plaintiff notes that sometime between December 29, 2011, when Plaintiff filed its Amended Complaint identifying Defendant by name for the first time, and January 23, 2012, several website domains owned by Defendant were either altered or no longer online. (*Id.* ¶¶ 5–8.) Based on the timing of these actions, Plaintiff maintains that Defendant is likely monitoring this litigation and taking evasive action in response thereto.

While these facts might conceivably suggest that Defendant is aware of this litigation and is taking steps to avoid detection, the court finds that they are just as, if not more, likely a mere coincidence. As to the siteripking.com website, the court finds that, without more, it is just as likely that Defendant coincidentally disabled this website around the same time as the court's Order on Plaintiff's Motion for Early Discovery. Defendant may well have simply abandoned this operation unilaterally at that time, rather than in response to anything occurring in this litigation.

The fact that Defendant apparently altered or disabled a number of his other websites after the Amended Complaint was filed also appears to be a coincidence.  Indeed, the probative value of this evidence, if any, is undercut by the fact that Defendant continues to operate a number of his other websites without any concern as to the progress of this litigation.  (Dillon Decl. ¶¶ 9-13.)

Altogether, the court finds that the evidence of Defendant's purported knowledge of this action pales in comparison to that which other courts considered before finding that a defendant is aware of the pending litigation.  *See, e.g., In Re Maxon Eng'g Servs.*, 418 B.R. at 666 (finding it was "unquestionable that Co-defendants are aware of this suit pending against them" where the defendants' attorney was provided with the complaint and summons and the co-defendants submitted declarations stating that they did not live at an address where the plaintiff attempted to affect service); *Tome,* 833 F.2d at 1093-1094 (finding that the defendants had "full knowledge of the pendency of the action against them" due to the pendency of an SEC investigation and a discussion among the defendants of the "size of the legal fees for all involved in this action"). *But see Smith v. Islamic Emirate of Afg,* Nos. 01 CV 10132(HB), 01 CIV 10144(HB), 2001 WL 1658211, at *2-4 (S.D.N.Y. Dec. 26, 2011) (unpublished) (authorizing service by publication on Osama Bin Laden because he could be "presumed to know that the estates of the victims would file civil cases against him . . . arising from the attack on the World Trade Center.")  Therefore, although a somewhat close call, the evidence ushered by Plaintiff falls short of convincing the court that Defendant is aware of the pendency of this litigation.

Perhaps more importantly, the court finds that Plaintiff's proposed means of effecting service falls well short of satisfying due process. As already noted, Plaintiff proposes to "place a website on the internet with the name of this case, the name of the Defendant, and an announcement of the lawsuit with PDF links to the Complaint and Summons." (Supp. at 8-9.) Plaintiff maintains that Defendant's technological savvy and internet familiarity makes it highly unlikely that an internet publication would not be seen by Defendant. (Dillon Decl. ¶ 18.)

However, the court finds that no matter how technologically sophisticated Defendant may be, no individual can have a full mastery of the entire internet. The internet is nearly infinite in nature. *See Reno v. ACLU,* 521 U.S. 844, 849-853 (1997) (describing the extraordinary size of the internet as it existed in 1996). As such, simply placing the complaint and summons on a website would be far less likely to draw Defendant's attention than a publication in a small regional paper, which, according to the *Mullane* Court, fails to satisfy due process. 339 U.S. at 315, *accord Tome,* 833 F.2d at 1093. Indeed, only chance alone would bring such a site to Defendant's attention; it is speculative, at best, that Defendant might enter his name or, even less likely, the name of this case, into an internet search engine. *See Mullane,* 339 U.S. at 315 (finding that "chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper"). Nor has Plaintiff provided any assurance that, if such a search were entered, Plaintiff's proposed website would be among the top search results. As such, there is a high probability that Plaintiff's proposed website would be buried in the internet's vastness and never come to Defendant's attention.

Plaintiff does propose that the court order Name.com to redirect Defendant's other domain names to the Plaintiff's website publication for a fourteen-day period. (Supp. at 9.) Arguably, this would make it much more likely that this action will be brought to Defendant's attention. However, Plaintiff does not cite any case law or other authority for the proposition that the court has jurisdiction to require Name.com, a nonparty, to affirmatively act in such a manner. Notably, Name.com has not been provided with any opportunity to object to Plaintiff's proposal, which would clearly interfere with Name.com's autonomy. Accordingly, although this "unorthodox" additional step might bolster Plaintiff's service by publication proposal, the court finds it lacks the authority to see it through.

Altogether, the court finds that Plaintiff's Rule 4(f)(3) alternate method of service fails to comport with constitutional notions of due process. The court understands that Plaintiff is frustrated with its inability to haul Defendant into court and make him stand for his alleged surreptitious internet activities. However, the court is not at liberty to bend the Constitution's guarantees in order to appease this frustration. Accordingly, having considered all of the arguments raised in both Plaintiff's Motion and Supplement, the court finds that Plaintiff's

Motion for Alternative Service is properly denied.

Wherefore, for the foregoing reasons, it is

ORDERED that "Plaintiff's *Ex Parte* Motion for Alternative Service" (Doc. No. 15) is DENIED.

Dated this 14th day of January, 2012.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge